**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| **WALTER L. SPRINKLE and** ) | |
| **REBECCA F. SPRINKLE** ) | **CASE 7-04-01592-WSA** |
| ) | |
| **Debtors.** ) | **CHAPTER 12** |
| ) | |

_____

## MEMORANDUM DECISION

The matter currently before the Court is the Motion for Administrative Expense Pursuant to 11 U.S.C. § 503(b) ("Motion for Administrative Expense") filed July 28, 2005 by Bobby C. Gray ("Gray") in the amount of $48,500.00, which is the outstanding balance on a post-petition contract Gray entered into with Walter L. Sprinkle, Jr. and Rebecca F. Sprinkle ("the Debtors"). The Debtors objected to Gray's motion arguing the deficiency amount owed to Gray is a pre-petition debt, which is not entitled to administrative expense priority. For the reasons noted below, the Court concludes that while Gray might have asserted a valid post-petition claim entitled to administrative expense priority under § 503(b), he is estopped from asserting such as more particularly noted in the Decision below; thus Gray's Motion for Administrative Expense will be denied.

FINDINGS OF FACT

1. The Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on April 9, 2004, which was subsequently converted into a petition for relief under

Chapter 12 of the Bankruptcy Code.[1]

2. By its Order dated May 20, 2004 ("May 20, 2004 Order"), this Court approved the rejection of six agreements designated as "leases" of dairy cattle between the Debtors and Gray[2] and the making of a new post-petition contract negotiated between the same parties, which provided for the dairy cattle to be sold to the Debtors for a purchase price of $187,000.00 payable at $5,500.00 per month commencing June 15, 2004 and continuing for a total of thirty-four months.[3]

3. Gray filed a proof of claim on January 31, 2005 alleging a secured claim in the amount of $148,500.00 based on purchased cattle. Gray attached this Court's May 20, 2004 Order in support of his claim. It also notes the dates of the pre-petition leases as the dates for the origin of the debts providing the basis for the claim. The proof of claim form, Official Form 10, expressly noted that it was not to be used to claim an administrative expense against the bankruptcy estate with the following wording, "NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503."

4. The Debtors on March 4, 2005 objected to Gray's claim, asserting the stated claim

---

[1] The Debtors filed a motion to convert the case to Chapter 12 on February 7, 2005. The motion was heard and granted without objection on March 22, 2005.

[2] The leases rejected were dated February 20, 2001, July 26, 2001, November 1, 2002, November 10, 2003, March 1, 2003 and August 25, 2003. Whether these leases were true "leases" within the meaning of 11 U.S.C. § 365, as counsel for Mr. Gray contends, has never been actually litigated and this Court makes no such determination as a part of this Decision.

[3] The monthly payments were to be withheld from the Debtors' proceeds of milk sales by Piedmont Milk Sales and mailed to Gray.

2

amount of $148,500.00 was too high and proposing the claim should be in the amount of approximately $110,000.00.

5. On March 15, 2005, the Debtors filed a motion to sell approximately 100 dairy cows free and clear of liens for a sum of at least $115,000.00. At the March 22, 2005 hearing on the motion, the Court heard evidence that the Debtors had received an offer of $100,000.00 for the purchase of the dairy cattle and that both New Peoples Bank and Gray were asserting a security interest in the dairy cattle.

6. New Peoples Bank asserted a valid and perfected security interest in all cattle owned by the Debtors, including any after-acquired by purchase or offspring, pursuant to a security agreement dated August 21, 2002.[4]

7. Gray alleged the dairy cattle sold were subject to a lien and security interest acquired by the post-petition contract between Gray and the Debtors which was approved by this Court's May 20, 2004 Order.

8. This Court by its Order dated March 24, 2005 authorized the Debtors to sell the dairy cows free and clear of liens for the sum of $100,000.00 with the proceeds to be held in escrow pending a determination of the division and distribution of the sale proceeds.

9 On May 6, 2005, this Court ordered the objection to Gray's claim be treated as an adversary proceeding pursuant to Rule 3007.[5] Consequently, the Debtors filed a

---

[4] New Peoples Bank filed a proof of claim on April 26, 2004 for a secured claim totaling $36, 318.83 for money loaned on August 21, 2002. A second proof of claim was filed by New Peoples Bank on the same for a $621,860.14 secured claim arising from a loan dated November 21, 2001.

[5] Rule 3007 provides "[i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." Rule 7001(2) states "a

        complaint requesting the Court to determine the appropriate recipient of the sale proceeds totaling $98,000.00,[6] as between New Peoples Bank and Gray and seeking a determination of the proper amount of Gray's claim.[7]

10. On June 28, 2005, the Court denied the Debtors' objection to Gray's claim and found the amount of Gray's claim to be $126,500.00, which was calculated as the full amount of the contract, $187,000.00, less the agreed payments received by Gray in the amount of $60,500.00.

11. On June 8, 2005, the date set for trial in the adversary proceeding, counsel for the two claimants advised the Court that they had reached a settlement between them as to a division of such funds. When counsel for the Debtors made known their unhappiness with the proposed settlement and their wish to challenge it, counsel for Mr. Gray argued that the Debtors had no interest in the matter and therefore no standing to object to any disposition of such funds agreed to by his client and New Peoples Bank, who he contended had the right to divide up the money as they might see fit. When the Court was unwilling to find that the Debtors had no possible interest in how the sale proceeds might be divided, it was agreed that the proposed settlement would be set for a hearing and noticed to all creditors and other parties in interest.

12. New Peoples Bank moved the Court to approve a compromise and settlement reached

---

proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d)" is an adversary proceeding.

    [6] When the sale closed, the Debtors did not have enough cattle to justify the $100,000.00 sale price. Consequently, the Debtors received $98,000.00 from the purchaser.

    [7] Adversary proceeding 05-07061 was commenced on May 9, 2005 by the Debtors' filing of the complaint.

4

|     |     |
| --- | --- |
|     | between New Peoples Bank and Gray regarding the division of the sale proceeds on June 15, 2005.  In such motion the representation was made that "all of the parties to this adversary proceeding agree that the proceeds are properly payable to only [New Peoples Bank] or Gray and that the proposed settlement does not substantially adversely affect any other creditor or party in interest in this proceeding . . . ." |
| 13. | When the agreed settlement between Gray and New Peoples Bank was heard on July 6, 2005, no party in interest objected to it.  At no time during that hearing did counsel for Mr. Gray or anyone else retract or comment upon the assertion in the Motion to Approve Compromise Settlement that no other party in interest would be "substantially adversely affect[ed]" by the terms of such settlement.  At no time during the hearing did counsel for Mr. Gray indicate that his client thereafter would alter the position that he was asserting a claim as a pre-petition secured creditor in favor of one as an administrative expense claimant. |
| 14. | The Court approved the compromise and settlement reached between New Peoples Bank and Gray on July 6, 2005, which provided that New Peoples Bank receive $20,000.00 and Gray receive $78,000.00. |
| 15. | The Debtors filed a Chapter 12 plan on June 30, 2005 proposing to treat the remaining balance on Gray's claim, $48,500.00, as a pre-petition unsecured claim. The plan provided an estimated payout to unsecured creditors of 20%. |
| 16. | On July 28, 2005, Gray filed an Objection to Confirmation of Chapter 12 Plan ("Objection to Confirmation") alleging the remaining balance on his claim, $48,500.00, was an administrative expense under 11 U.S.C. § 503(b) because it arose out of a post-petition |

      transaction that benefitted the bankruptcy estate by allowing the Debtors to acquire and keep dairy cattle and to continue generating income by operating the dairy farm. On the same day, Gray filed a Motion for Administrative Expense, seeking allowance of the $48,500.00 balance of his claim as an administrative expense of the bankruptcy case.

17. In his Motion for Administrative Expense, Gray alleges the Debtors with the assistance of George C. Eller sold cattle on two occasions without prior Court approval: a 2004 sale of thirty head of dairy cattle for $15,446.00 and a March 2005 sale of thirteen or fourteen dairy cows for approximately $7,536.00. Gray further asserts he did not receive any proceeds from either of these sales. The Debtors dispute these allegations. The Court does not determine whether these sales occurred as alleged or whether Gray has a secured claim or administrative claim with respect to cattle sold without prior Court approval and for which he did not receive proceeds.

18. The Debtors filed an objection to Gray's motion on August 9, 2005 arguing that the deficiency amount of $48,500.00 owed to Gray was a pre-petition debt, which was not entitled to administrative expense priority.

19. A hearing was held on the Motion for Administrative Expense and Objection to Confirmation on August 17, 2005 and both parties have since submitted written arguments to the Court. The matter is now ready for decision.

## CONCLUSIONS OF LAW

      This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District

Court on July 24, 1984.  A Motion for Administrative Expense is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(A) and (B) and confirmation of a Chapter 12 Plan is likewise a "core" matter pursuant to 28 U.S.C. § 157(b)(2)(L).

Pursuant to 11 U.S.C. § 503(b)(1)(A), a creditor of the Debtors can pursue a claim for an administrative expense for "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case."  The Court does not dispute that Mr. Gray might have asserted a post-petition claim entitled to administrative expense priority consistent with *Devan v. Simon Debartolo Group, L.P. (In re Merry-Go-Round Enterprises, Inc.)* 180 F.3d 149,155-58 (4th Cir. 1999), but it concludes that he is estopped from asserting an administrative expense based on his prior course of conduct in this case.

First, Gray filed a proof of claim for a $148,500.00 secured claim by filing with the Court Official Form 10 which states on its face "NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case.  A 'request' for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503." Section 503(a) of the Bankruptcy Code provides "[a]n entity may timely file a request for payment of an administrative expense." A proof of claim pursuant to Bankruptcy Rule 3001(a) "shall conform substantially to the appropriate Official Form."   Courts have been willing to find the § 503 procedure for requesting payment of an administrative expense satisfied by a properly filed proof of claim when the proof of claim provides sufficient notice of the administrative nature of the claim. *See e.g., In re* Fas Mart Convenience Stores, Inc., 320 B.R. 587, 594 (Bankr. E.D. Va. 2004)(holding timely filed proofs of claims described the claim "as a § 507(a) claim, one for

administrative expenses allowed under § 503(b)"), *In re* Sage Richmond, LLC, 285 B.R. 364, 365-66 (Bankr. E.D.Va. 2002) (finding claim was plainly labeled as a claim for a post-petition administrative expense although claim was filed on a regular proof of claim form).  The Court in *In re Fas Mart* stated "[the creditor] would have been well advised to file an administrative claims form out of an abundance of caution, but other parties to the case were sufficiently put on notice of the administrative nature of [the creditor's] claim against debtors' estate through the proofs of claim." 320 B.R. at 594.  In this case, nothing on the proof of claim form filed by Gray indicates the claim is for an administrative expense.   Gray's proof of claim states the debt was incurred on six pre-petition dates - February 20, 2001, July 26, 2001, November 1, 2002, November 10, 2002, March 1, 2003, and August 25, 2003.  Moreover, Gray's response to the Debtors' objection to his claim does not allege his claim is for an administrative expense.

        Secondly, after the dairy cattle were sold and the sale proceeds received, the Debtors initiated an adversary proceeding to determine how the proceeds were to be divided between New Peoples Bank and Gray. The motion filed by New Peoples Bank requesting the Court to approve the settlement reached between New Peoples Bank and Gray states "Gray asserts that the cattle that were sold were either (a) subject to a lien and security interest acquired by Gray as adequate protection pursuant to an Order of this Court entered in the bankruptcy proceeding on May 20, 2004, or (b) cattle owned by Gray and leased to the [Debtors], pursuant to various lease agreements."  Furthermore, the motion provides "all of the parties to this adversary proceeding agree that the proceeds are properly payable to only [New Peoples Bank] or Gray and that the proposed settlement does not substantially adversely affect any other creditor or party in interest in this proceeding."  No objection to the motion was filed by Gray nor did Gray appear in

8

opposition to the motion at the hearing held on July 6, 2005.  Consequently, the Court approved the settlement, thus splitting the sale proceeds between New Peoples Bank and Gray in the amounts of $20,000.00 and $78,000.00, respectively.  Just three weeks after the settlement agreement was approved, Gray alleged for the first time that the balance of his claim, $48,500.00, was an administrative expense.

Section 552(a) of the Bankruptcy Code states the general rule that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." An exception to this general rule is provided in § 552(b)(1):

> if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, or profits of such property, then such security interest extends to such proceeds, product, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law . . . .

As an affirmative defense to the Debtors' complaint, New Peoples Bank alleged it held "a valid and perfected security interest in all cattle owned by the [Debtors], or after acquired by purchase or offspring, pursuant to a security agreement dated August 21, 2002." This Court's May 20, 2004 Order approved the post-petition agreement providing for the Debtors' purchase of dairy cattle from Gray for a purchase price of $187,000.00 payable in monthly installments of $5,500.00. Accordingly, if the Debtors' interest in the dairy cattle supplied by Mr. Gray was only by means of the post-petition agreement, New Peoples Bank's after-acquired property clause would have been ineffective against dairy cows acquired post-petition by *purchase* rather than as offspring or proceeds of pre-petition cattle owned by the Debtors.  By agreeing to split the sale

9

proceeds, Gray in effect recognized that New Peoples Bank had a cognizable claim as a pre-petition secured creditor against dairy cattle possessed pre-petition by the Debtors.

The Court concludes that it is simply too late in the case for Mr. Gray now to seek the benefit of treatment as an administrative claimant rather than as a pre-petition creditor. Whether this conclusion be cast in terms of waiver, election of remedy, estoppel by course of litigation conduct, or res judicata, it is grounded in the belief that such claim is inconsistent with earlier representations made to the Court that other parties in interest would not be "substantially adversely affect[ed]" by the terms of the accommodation reached between Gray and New Peoples Bank as to the division of the sale proceeds of the dairy cows.  As long as both of such parties were simply competing pre-petition secured creditors, there was little basis to find fault with such assertion.  When, however, Mr. Gray seeks to be treated in the preferred position of an administrative expense claimant against the estate having a priority over all other pre-petition creditors, the situation is radically altered.  The effect of such treatment would mean that each dollar from that settlement which was allocated to New Peoples Bank would increase the administrative expense claim of Mr. Gray, and vice-versa.  Accordingly, the unsecured creditors would be very "substantially adversely affect[ed]" by the terms of the settlement reached between Gray and New Peoples Bank if at this point Gray was permitted to have his proof of claim treated as a request for allowance of an administrative expense against the bankruptcy estate.  If one assumes a fixed amount of money to be provided by the Debtors to their creditors, treating Gray as an administrative claimant would reduce the money which will be distributed to the general creditors.  In a zero sum game, more for Gray means less for the general creditors.  It is neither equitable nor just to acquiesce in such a result after the other creditors have been lulled into

thinking that Mr. Gray was seeking nothing more than the full protection of his interest as a pre-petition secured creditor of the estate and the Court has made rulings based on that same expectation. At this point in the administration of this case, the Court concludes that Mr. Gray's newly asserted demand to be treated as an administrative expense claimant is not a "timely" filed request within the language of 11 U.S.C. § 503(b). Accordingly, the Court will deny the motion for such treatment and overrule the objection to confirmation based on the purported validity of such motion. An order to such effect will be entered contemporaneously with the signing of this Decision.

This 28th day of September, 2005.

_William F. Stone, Jr._
UNITED STATES BANKRUPTCY JUDGE